UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACQUELINE HILLIARD, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> INTERNATIONAL CITY/COUNTY MANAGEMENT ASSOCIATION – RETIREMENT CORPORATION, <br><br> Defendant. | Civil Action No. 08-2201 (BJR) <br><br> ORDER AND MEMORANDUM OPINION ON MOTION TO DISMISS |

This matter is before the Court on a motion to dismiss, or, in the alternative, motion to strike, by Defendant International City/County Management Association – Retirement Corporation (hereinafter "ICMA-RC"). *See* Dkt. #57. Plaintiffs are African-American employees and former employees of ICMA-RC. Five of the plaintiffs—Jacqueline Hilliard, Karen Robinson, Cynthia Tolliver, Joyce Namasaka, and Audrey Travers (the "Hilliard Plaintiffs")—allege that ICMA-RC discriminated against them on the basis of their race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*; the Civil Rights Act of 1866 and 1870, as amended and codified at 42 U.S.C. § 1981; and provisions of the Equal Pay Act, 29 U.S.C. § 206, as amended. The three remaining plaintiffs—Shawnclive Crandon, Ronald Gordon, Jr., and Michelle Dallas (the "Crandon Plaintiffs")—allege that ICMA-RC discriminated against them on the basis of their race in violation of 42 U.S.C. § 1981. Plaintiffs further allege that ICMA-RC retaliated against them for complaining about such discrimination. In light of the pleadings and supporting briefs, ICMA-RC's motion is granted in part and denied in part.

I.      **LEGAL STANDARD**

   A.      **Rule 12(b)(6) Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *In re Interbank Fund Corp. Sec. Litig.*, 668 F. Supp. 2d 44, 47-48 (D.D.C. 2009) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also* Fed. R. Civ. P. 12(b)(6). Ambiguities must be resolved in favor of the plaintiff, giving him the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in the complaint. *In re Interbank Fund Corp. Sec. Litig.*, 668 F. Supp. 2d at 47-48.

To survive a Rule 12(b)(6) motion, the complaint must plead sufficient facts that, taken as true, provide "plausible grounds" that discovery will reveal evidence to support the plaintiff's allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570)). Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). Although the court must construe the complaint in a light most favorable to the plaintiff, the court is not required to accept factual inferences that are unsupported by facts or legal conclusions cast in the form of factual allegations. *City of Harper Woods Emps' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009). The court's function is not to weigh potential evidence that the parties might

present at a later stage, but to assess whether the pleading alone is legally sufficient to state a claim for which relief may be granted. *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

Because the court's review of a Rule 12(b)(6) motion is based upon consideration of the allegations contained in the operative complaint, the court will not consider extraneous documents attached or referenced by any party, or additional factual assertions contained therein, except under limited circumstances. *See generally Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009); *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).[1]

### B.     Rule 12(f) Motion to Strike

Although motions to strike are generally disfavored, a court has "liberal discretion" to strike such matter as it considers appropriate under Federal Rule of Civil Procedure 12(f). Fed. R. Civ. P. 12(f); *see Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003) (quoting *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000)). A court may strike claims that attempt to circumvent earlier decisions by that court denying such claims. *See Cambridge Toxicology Group v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007). A court may also strike a claim if the relief claimed is unavailable under the applicable law. *See* 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.37 (3d ed. 2004).

---

[1]   ICMA-RC attached a Declaration to its motion to dismiss; the Crandon Plaintiffs attached an affidavit to their opposition. Neither of these documents were considered in the Court's determination.

## II. BACKGROUND

The first Complaint in this case was filed on December 18, 2008. Plaintiffs sought twice to certify a class, but were unsuccessful. *See* Memorandum Opinion and Order of Feb. 2, 2010 (dkt. #20). Plaintiffs filed their First Amended Complaint on July 14, 2010 (dkt. #30). The case was transferred to this Court from Judge Friedman on September 1, 2011. The First Amended Complaint was dismissed by this Court on November 23, 2011, for failure to advance any individual claims. Order (dkt. #51) at 12. This Court granted Plaintiffs "a final opportunity to amend their Complaint" to assert individual claims of *retaliation* under 42 U.S.C. § 1981. *Id.* at 13. The Final Joint Amended Complaint ("FJAC") was filed on December 20, 2011. *See* Dkt. #53. The Defendant filed this motion shortly thereafter. Plaintiffs allege that they were denied promotions and training, poorly compensated, and subjected to a hostile work environment on the basis of their race (all Plaintiffs) and sex (Hilliard Plaintiffs).

## III. DISCUSSION

### A. Plaintiffs' claims for discrimination under 42 U.S.C. § 1981, any Title VII claims, and claims under the Equal Pay Act are stricken in light of this Court's previous Order

At the outset, there seems to be some disagreement between the parties as to the intent behind this Court's November 23 Order. The Court advised Plaintiffs that they could not: assert claims under Title VII; assert claims on behalf of dismissed Plaintiffs; or assert claims based on a "pattern and practice" theory.[2] Order at 13. The Court further advised Plaintiffs:

> The joint pleading <u>may</u> contain individual retaliation claims brought pursuant to 42 U.S.C. § 1981 . . . . Further, this opportunity to amend is not an invitation to raise previously

---

[2] It is not clear that Plaintiffs actually make Title VII claims in their FJAC; there are references made to Title VII in the sections on Jurisdiction (¶ 1) and in Count I (¶ 176), but Plaintiffs do not appear to plead claims under Title VII. However, to the extent that they do make any such claims, those claims are stricken.

4

>  unraised claims or allegations. The time has come for the matter to
>  move forward with finality as to the parties and claims at issue.

*Id.* at 13 n.6 (emphasis in original).

The parties disagree as to the extent to which the Court intended to limit Plaintiffs' claims in the FJAC. Understandably, the Plaintiffs wish to read the previous Order as merely "discouraging" claims beyond those for retaliation pursuant to 42 U.S.C. § 1981. That reading, however, is incorrect. The Court granted Plaintiffs leave to amend *only* claims for retaliation under 42 U.S.C. § 1981. Any other claims in the FJAC were made without the Court's leave, and will be stricken.

The Court wishes to emphasize that, while this is the third operative Complaint in this case, this is Plaintiffs' *fifth attempt* to state cognizable claims,[3] and only the first where there have been any properly individualized claims. As noted in this Court's previous Order, it is time for this matter to move forward with finality as to the claims at issue.

Therefore, in light of this Court's directive, Plaintiffs' claims for discrimination under 42 U.S.C. § 1981 (Counts I, VI, VII, VIII, and IX, and Count XI to the extent it pleads discrimination), for hostile work environment under 42 U.S.C. § 1981 (Count II), for constructive discharge under 42 U.S.C. § 1981 (Count IV), and for violations of the Equal Pay Act, 29 U.S.C. § 206(d)(1) (Count V), along with any references to Title VII, are stricken from their Complaint.

---

[3] Plaintiffs filed a motion to amend their original Complaint (with attached Amended Complaint) on July 6, 2009; Judge Friedman denied that motion and held that the amendment was futile. *See* Memorandum Opinion and Order of Feb. 2, 2010 (dkt. #20). The Crandon Plaintiffs filed a proposed Amended Complaint with their motion to amend (dkt. #46) that contained improper "pattern and practice" class claims. Order of Nov. 23, 2011 at 13.

**B.      Plaintiff's claims for retaliation under 42 U.S.C. § 1981 are dismissed in part**

After striking the above claims, three claims remain in the FJAC: Count III, which alleges retaliation under 42 U.S.C. § 1981 against Plaintiffs Hilliard, Tolliver, Robinson, and Travers; Count X, which alleges retaliation under 42 U.S.C. § 1981 against Plaintiffs Crandon and Gordon; and Count XI, which alleges retaliation under 42 U.S.C. § 1981 against Plaintiff Dallas.

To establish a prima facie case of retaliation, a plaintiff must show that she engaged in activity protected under Section 1981, that her employer took an adverse personnel action against her, and that a causal connection exists between the two. *Carney v. American Univ.*, 151 F.3d 1010, 1095 (D.C. Cir. 1998). Not every complaint by an employee entitles the employee to protection from retaliation under Section 1981—the complaint must allege unlawful discrimination in some way. *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 89 (D.D.C. 2010). An adverse action "in the retaliation context encompass[es] a broader sweep of actions than those in a pure discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008). Rather than being limited to discriminatory actions that impact the terms and conditions of employment, retaliatory claims may extend to harm unrelated to employment, so long as "a reasonable employee would have found the challenged action materially adverse." *Id.* (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)). That is, the challenged action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68 (internal citations omitted).

>   *1. The Hilliard Plaintiffs:   Jacqueline Hilliard, Karen Robinson, Cynthia Tolliver, Joyce Namasaka, and Audrey Travers*

In Count III, the Hilliard Plaintiffs[4] allege that, shortly after Plaintiffs filed their Complaint in this action in December 2008, ICMA-RC's employees (including two in particular, Jerry Backenstoe and Gwen Mallard-Winter) "engaged in additional discriminatory activity described herein including hostile treatment, non-selection for promotion and training as well as continued inequality in pay . . . ." FJAC ¶ 193.  At the outset, the language of the Hilliard Plaintiffs' claim is self-defeating.  The claim speaks to "additional discriminatory activity" and "continued inequality in pay."  That is, the Plaintiffs allege that they were ill-treated after the filing of this action in the same way that they were ill-treated before it was filed.  The implication, then, is that the treatment was not in retaliation for Plaintiffs' filing a Complaint, but merely a continuation of prior behavior.

Even if the Court looks past the language implying consistency in behavior, most of the Hilliard Plaintiffs' factual pleadings fail to state a claim for retaliation.

>   a.   <u>Plaintiffs Robinson, Namasaka, and Travers</u>

Plaintiff Robinson pleads facts referring to incidents that occurred only prior to December 2008.  The only post-filing facts pleaded by Plaintiff Namasaka involve her being promoted to a managerial position in May 2009 (FJAC ¶ 124), which defeats any claim of "adverse action."  Plaintiff Travers was also offered a promotion in 2009, and did not plead any facts alleging adverse action following the filing of this action. FJAC ¶ 141.  Therefore, these Plaintiffs fail to state a claim for retaliation under Section 1981.

---

[4]   Plaintiff Namasaka is not named in the retaliation claim, nor does the Hilliard Plaintiffs' opposition to Defendant's motion reference her in connection with retaliation claims. However, for the sake of clarity, the Court will consider her potential retaliation claim in its analysis.

7

b.      Plaintiff Hilliard

Plaintiff Hilliard attempts in her opposition to claim that she experienced retaliation not as a result of her filing of the Complaint in this action, but her filing a complaint with the Financial Industry Regulatory Authority ("FINRA"). Hilliard Opp. at 11.  Hilliard complained to FINRA "shortly after" September 2008 with regard to the licensing qualifications of Mallard-Winter, who was placed in a Director position to which Hilliard claims she was discouraged from applying. FJAC ¶¶ 48-53.  There is no reason to believe that Hilliard's complaint to FINRA implicated her rights under Section 1981 in any way—Mallard-Winter is an African-American woman herself.  Hilliard's complaint to FINRA was not protected activity.

As to the period following December 2008, Hilliard alleges in her factual pleadings that Backenstoe and Mallard-Winter "continued to treat [her] in a hostile manner." FJAC ¶ 69.  There is no indication that there was a specific or distinct adverse action caused by the filing of the Complaint in this action; therefore, Hilliard has failed to state a claim for retaliation under Section 1981.

c.      Plaintiff Tolliver

Plaintiff Tolliver presents a different picture.  In her factual pleadings, Tolliver claims that she was unable to apply for a position as a manager in May 2009 because the position was not posted as available prior to it being filled.  When she spoke with Human Resources about the fact that the job was not posted, she was told that "she was not on the managerial track for potential promotion and . . . she was not 'promotional material,'" and "she needed to get out of Client Services in order to advance at ICMA-RC." FJAC ¶ 100-01.  This is distinct from the hostile treatment at the hands of Backenstoe and Mallard-Winter that Tolliver alleges took place prior to this action.  It is plausible that Tolliver's ability to advance was impacted by her filing this suit in December 2008.

Tolliver's claim is a close one, but she has alleged a distinct adverse action that took place after she exercised her rights under Section 1981 by filing this Complaint. Assuming, as the Court must at this stage, the truth of Tolliver's allegations, it is not necessary at this time to determine whether the actions taken against her rise to the level of retaliation under Section 1981. "The D.C. Circuit has long recognized the ease with which a plaintiff claiming employment discrimination can survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted," *Rouse v. Berry*, 680 F. Supp. 2d 233 (D.D.C. 2010), and a claim for retaliation should be no different. It is plausible that Tolliver's being labeled as "not 'promotional material'" resulted from her filing this case, and this Court can make the inference that a reasonable worker may have been dissuaded from filing this action by the alleged adverse actions of Defendant. Tolliver's claim under Count III stands.

      2. *The Crandon Plaintiffs:   Shawnclive Crandon, Ronald Gordon, Jr., and Michelle Dallas*

      a. <u>Plaintiff Crandon</u>

Count X sets forth retaliation claims for Plaintiffs Gordon and Crandon. As to Plaintiff Crandon, Count X states that "the adverse and tangible employment action taken against Plaintiff, Crandon [*sic*] was taken against him because of his race and color." FJAC ¶ 239. There is no claim that ICMA-RC retaliated against Plaintiff Crandon for complaining about discrimination. Turning to Crandon's factual pleadings, he relates only one incident post-dating the filing of this action. He claims that, in March 2011, more than two years after the filing of the Complaint herein, "Defendant again attempted to undermine [his] ability to obtain a promotion" when "Senior Management contacted [him] regarding a notation on an account" and told Crandon "that he should not be assisting associates, and that the information he provided was incorrect." FJAC ¶ 147.

Crandon's pleadings do not satisfy a claim for retaliation. First, the Supreme Court has recognized that, where there is no other evidence, a significant time lapse can defeat the inference of causality in a retaliation action. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (noting that "[a]ction taken . . . 20 months later suggests, by itself, no causality at all). The action Crandon describes took place more than two years after this action was filed. Furthermore, while it is not necessary at this stage to evaluate whether an alleged adverse action truly rises to the level of a retaliation claim, the action Crandon describes does not even rise to the bare minimum; while he claims that Defendant "attempted to undermine [his] ability to obtain a promotion," the comments from Senior Management, taken alone, suggest nothing more than average work criticism. There is absolutely no indication that a reasonable worker would have found the statements to be "materially adverse," and actionable retaliation claims do not extend to circumstances where a worker experiences "trivial harms." *Wiley v. Glassman*, 511 F.3d 151, 161 (D.C. Cir. 2007). Crandon's claim, with nothing more, amounts to a legal conclusion cast in the form of a factual allegation, as there is no indication that the comments made to him did, in fact, undermine his ability to obtain a promotion, nor that a reasonable employee would have believed they did. Crandon's factual pleadings do not allow for the reasonable inference that he has experienced retaliation by Defendant as a result of his participation in this action. Therefore, his retaliation claim is dismissed.

      b.    <u>Plaintiff Gordon</u>

In Count X, Plaintiff Gordon alleges that, after he spoke "to management about discrimination for his failure to obtain the aforesaid promotions," he was excluded from company meetings and training, deprived of remote work privileges, and treated differently from other employees with regard to his medical absences. FJAC ¶ 238. In the factual background portion of the Complaint, Gordon alleges that he "complained to the Human Resources

Department as to why he had not been considered for the position," and that the Director of Human Resources "sympathized with Mr. Gordon and said that he should have been promoted to something above his current position." FJAC ¶ 150.  There is no mention as to whether he told Human Resources that he believed he was not promoted for discriminatory reasons.  It is unclear whether this is the conversation where he claims to have made a complaint about discrimination in promotion practices.

Assuming that the conversation Gordon relates is the same one referenced in Count X, he has satisfied the first step in stating a claim for retaliation under Section 1981.  As with Plaintiff Tolliver, it is not necessary at this time to determine whether the actions taken against Gordon rise to the level of retaliation under Section 1981.  Plaintiff Gordon pleaded facts alleging that he complained of discrimination when he was not promoted, and that adverse actions were taken after he made his complaint such that he may have been deterred from engaging in the protected action.  That is sufficient at this stage, and his claim stands.

    c.  <u>Plaintiff Dallas</u>

Plaintiff Dallas' claims under Section 1981 are treated in Count XI.  While she does not explicitly differentiate her discrimination and retaliation claims, she pleads facts consistent with a retaliation claim under Section 1981.  Dallas states that she attended EEOC mediation with Defendant in November 2010. FJAC ¶ 160.  Dallas alleges that discrimination against her by managers "quickly resumed" following her return to work in December 2010. *Id.*  To the extent that Dallas pleads continued behavior, such actions could not support a claim of retaliation, as causation would be lacking.  Furthermore, most of the actions Dallas alleges do not meet the minimal pleading requirements for a claim of retaliation.  Dallas alleges that she worked on a project in January 2011 in which her work was subjected to re-writes following meetings, the Director with whom she worked left meetings to take personal calls, and the Manager with

whom she worked did not speak to her when they were alone. FJAC ¶¶ 163-64.  None of this behavior allows the Court to infer that a reasonable worker would have found such actions "materially adverse," nor to reasonably infer that the behavior was in retaliation for her EEOC complaint.

However, Dallas also contends that she received a negative performance review for the year 2010, and that she never had the opportunity to address or correct the errors her manager alleged. FJAC ¶¶ 168-69.  Dallas also states that her manager scheduled a meeting with her on March 3, 2011, to discuss the negative performance review, which he had not done in the past. *Id*.  A negative performance review certainly amounts to action that a reasonable worker would perceive as materially adverse, and that might deter such a worker from making a complaint. Dallas also alleges that this was a new action on the part of her manager, which distinguishes it from the "resumed" behavior she alleges for her claim of discrimination.  At this stage, pleading a new, adverse action following her protected activity is all that is required, and this particular aspect of Dallas' claim for retaliation stands.

Therefore, it his, hereby,

**ORDERED** that ICMA-RC's motion to dismiss, or, in the alternative, motion to strike is **GRANTED** in part and **DENIED** in part.  It is further, hereby,

**ORDERED** that Counts I, II, IV, V, VI, VII, VIII, and IX of the FJAC are **STRICKEN**. It is further, hereby,

**ORDERED** that Count XI is **STRICKEN** only to the extent that it pleads claims of discrimination under 42 U.S.C. ¶ 1981.  Plaintiff Dallas' claim for retaliation under Count XI stands.  It is further, hereby,

12

**ORDERED** that Counts III and X are **DISMISSED** with prejudice as to Plaintiffs Hilliard, Robinson, Namasaka, Travers, and Crandon.  Plaintiff Tolliver's claim under Count III and Plaintiff Gordon's claim under Count X stand.  It is further, hereby,

**ORDERED** that Defendant ICMA-RC will serve its Answer to Plaintiffs' FJAC no later than October 26, 2012.  It is further, hereby,

**ORDERED**, in light of the foregoing Order, that the remaining parties shall file a new Meet and Confer Report, satisfying the requirements set forth in Local Civil Rule 16.3 and this Court's Standing Order (dkt. #52), no later than December 12, 2012.  Finally, it is, hereby,

**ORDERED** that the parties shall appear before this Court for a Status Conference on December 17, 2012, at 2:00 P.M., in Courtroom 12 of the Prettyman Courthouse.

**SO ORDERED** this 12th day of October, 2012.

*[signature: Barbara J. Rothstein]*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE